Campbell et al. *v.* G. C. Murphy Company, Appellant.

Argued April 23, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*A. W. Henderson,* with him *Lawrence D. Blair* and *Moorhead & Knox,* for appellant.

*Harry A. Estep,* with him *James T. Philpott,* for appellees.

OPINION BY STADTFELD, J., July 10, 1936:

This was an action in trespass to recover damages for alleged food poisoning. The only pleading in the case is the plaintiff's statement of claim, which alleged negligence on the part of defendant in the sale and service to plaintiff, of unwholesome "minced chicken salad sandwiches."

On August 26, 1931, the woman plaintiff, Amanda Campbell, ate lunch in the restaurant of defendant company's store on Fifth Avenue, Pittsburgh, Pennsylvania. The plaintiff and her sister, who accompanied her, ate chicken salad sandwiches with coffee and ice cream and plaintiff ate some tomatoes her sister had ordered. Within an hour she became nauseated and later was found to be suffering from ptomaine poisoning.

Plaintiff produced no evidence of any foreign substance in the food she had eaten and there was nothing about its taste or appearance to indicate that it was unwholesome.

The case was tried before the court and a jury, and submitted to the jury on the issue of the defendant's negligence. The jury returned a verdict in the sum of $1,000 in favor of Amanda Campbell, the woman plaintiff, and, under the instruction of the court, in favor of the defendant as to John T. Campbell, who had died before the trial.

Defendant thereupon moved for judgment non ob-

stante veredicto and for a new trial. After argument before the court in banc, both motions were overruled in an opinion by MARSHALL, T. M., J., and judgment was entered upon the verdict. Defendant thereupon took this appeal.

The assignments of error are to the refusal of binding instructions, the refusal of motion for judgment non obstante veredicto, the admission of certain testimony over objection ex parte defendant, and the refusal of motion for new trial.

Plaintiff testified that she, accompanied by her sister, Mrs. Evans, left her home in Mt. Washington between 10:30 and 11:00 o'clock A. M. on August 26, 1931, to go downtown. They entered the defendant's store between 1:30 and 2:00 o'clock P. M. and decided to have lunch there. The plaintiff had a chicken salad sandwich and coffee and her sister had the same. She noticed nothing about the sandwich. Plaintiff also ate some lettuce and tomato salad that her sister had ordered, and plain vanilla ice cream. Plaintiff admitted that the chicken salad tasted all right, as did the lettuce and tomato salad and the ice cream, and that, as far as she knew at the time she ate the food, there was no odor about it, nor anything that would indicate any trouble with the food. Prior to going to defendant's store, the only thing she had partaken of that day, was a cup of coffee. After she left the store, she did not feel so very well and about 2:30 or 3:00 o'clock P. M. went home. She went to her neighbor's and told her she was sick, and there became actively sick and was taken home, whereupon a doctor was called and he arrived about 5:00 o'clock P. M.

Dr. Joseph A. Soffel, who attended the plaintiff, testified that he diagnosed the case as food poisoning or ptomaine poisoning. He made no examination of the contents of the stomach, and testified that the plaintiff must have eaten contaminated or impure food, in view

of her condition. Her sister became ill almost simultaneously and suffered in like manner.

The principles governing, and the responsibility of restaurant keepers in the furnishing of food to their customers, are discussed in a well considered opinion by our Brother BALDRIGE in West v. Katsafanas, 107 Pa. Superior Ct. 118, 162 A. 685, wherein the authorities are reviewed. That action was an action of assumpsit against a restaurant keeper to recover damages for a breach of implied warranty. The testimony established that the plaintiff ordered from the defendant, certain food, including a sandwich, and while eating the latter, he became ill. He stated that the sandwich was not palatable and after eating a part of it—he suffered from poisoning. This court held that the transaction between the plaintiff and defendant involved a sale and the restaurant keeper impliedly warranted that the food was fit for human consumption, and that when the plaintiff suffered injury, which was the natural and direct result of eating the contaminated food purchased from the defendant, he was entitled to recover damages for breach of the warranty. Quoting from the opinion in that case, p. 123: "The law places an obligation upon the seller to see that the articles are fit for the purposes for which they are intended. There can be no doubt, of course, that the food purchased was to be consumed. This places a heavy burden upon the vendor of food; but public policy, as well as public health, demands that great care be exercised by one who has the opportunity of examining and knowing the quality of food sold, which the purchaser may not determine. If the food is unfit for consumption, and damages result therefrom, they ought to be placed, not upon one who has had no opportunity of determining its condition, but rather upon the one who has had means of informing himself of the condition of the food. The Sales Act of May 19, 1915, P. L. 543, 563, provides as follows: 'Sixth: The

measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty.' Consequential damages have been frequently recovered for breach of implied warranty: Griffin v. Metal Products Co., 264 Pa. 254; Rex Auto Exchange v. Hoffman, 84 Pa. Superior Ct. 369; Budd v. Mutchler, 98 Pa. Superior Ct. 420. Professor Williston, in his treatise on Sales, 2d ed., vol. 2, sec. 614, stated that 'Unwholesome food sold to human beings under an expressed or implied contract ...... subjects the seller to responsibility for the consequences.' "

Likewise, in 26 C. J. 76, sec. 95, it is said: "...... And it has been held that a seller of food, at a public eating place, to be consumed on the premises, is presumed to know of any unwholesome condition of the food and is liable for damages to a purchaser who is made ill on account of such unwholesomeness."

While the action in the instant case was in trespass, the responsibility of the defendant in either case is the same. The circumstances of the present case we believe were sufficient to form the basis for an inference by the jury that the sandwich furnished plaintiff was unwholesome. See also Davis v. Camp Packing Co. (Iowa), 176 N. W. 382, 17 A. L. R. 649, where many of the cases are reviewed. We are of the opinion that the request for binding instructions, as also the motion for judgment non obstante veredicto were properly overruled.

A more serious question arises with reference to the admission of the testimony of Miss Marjorie Campbell, a daughter of the woman plaintiff. She testified that several days after August 26, 1931, she saw Miss Calvin, in charge of the personnel at defendant's store. She was thereupon asked as to a statement made to her by Miss Calvin, to which question, an objection was sustained. She then testified that she inquired when she went to the store, as to who was in charge of the cafeteria and

was referred to a Mr. Taylor. Mr. Taylor, in turn, referred her to Miss Calvin. After testifying to a discussion of her mother's condition with Miss Calvin, the witness was asked the following question: "Q. What was it she told you that happened in the store on August 26 in the restaurant?" An objection that this evidence was incompetent was overruled and an exception noted and thereupon the witness answered: "A. She admitted that two of the girls got sick from eating there and were sick right before they got home. She said they arrived sick on the street car." Mr. Estep then asked: "Q. Did she tell you what they had that made them sick? A. Chicken salad sandwiches."

The law in this state on the subject of admissions by an agent is laid down by Mr. Justice SHARSWOOD in the case of Penna. R. R. Co. v. Books, 57 Pa. 339, 343, as follows: "...... The rule is well settled, that what an agent says while acting within the scope of his authority, is admissible against his principal, as part of the res gestae, but not statements or representations made by him at any other time. Shelhamer v. Thomas, 7 S. & R. 106; Levering v. Rittenhouse, 4 Whart. 130; Jordan v. Stewart, 11 Harris 244. The admissions of an agent, not made at the time of the transaction, but subsequently, are not evidence; thus the letters of an agent to his principal, containing a narration of the transaction in which he had been employed, are not admissible against the principal. Hough v. Doyle, 4 Rawle 291; Clark v. Baker, 2 Whart. 340."

Again, in Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449, 460, 15 A. 865, by HAND, J., the Supreme Court says: "In order to warrant the proof of admissions by an agent, one or more of the following facts must exist: It must appear that the agent was specifically authorized to make them; or his powers must have been such as to constitute him the general representative of the principal, having the management of the entire business; or

the admissions must have formed part of the consideration of a contract; or, if they are non-contractual they must have been part of the res gestae." See also McGrath v. Penna. Sugar Co., 282 Pa. 265, 127 A. 780.

In the restatement of the law of agency by the American Law Institute, Section 288, the law is set forth as follows: "§288. WHEN AGENT HAS AUTHORITY TO MAKE STATEMENTS. (1) Authority to do an Act or conduct a transaction does not of itself include authority to make statements concerning the act or transaction. (2) Authority to make statements of fact does not of itself include authority to make statements admitting liability because of such facts."

Under the rules established by the foregoing authorities, there can be no question that the statements objected to were not part of the res gestae. No special authorization to make them was shown. Miss Calvin was not the general representative of the defendant having the management of its entire business. There was no contract of which the admissions formed a part. As pointed out above, Miss Campbell testified that she went in to see what the defendant company was going to do about her mother's condition. Miss Calvin was designated as the person with whom she was to take up this matter. There was an entire absence of proof, however, that Miss Calvin was authorized to make statements which would be binding upon the principal. The fact that Mr. Taylor sent Miss Campbell to Miss Calvin did not make her testimony admissible.

The situation discloses an entire lack of authority conferred upon Miss Calvin to make admissions binding upon the defendant company as to other persons who became ill from eating chicken salad sandwiches.

In addition, there is no evidence in the case which would admit the admissions as to other employees being sick from eating chicken salad sandwiches if such admissions had been made by Mr. Taylor. Miss Marjorie

Campbell testified that Mr. Taylor referred her to Miss Calvin; that she inquired around the store and asked who was in charge of the cafeteria restaurant, and then she went to his office and asked Mr. Taylor if he was in charge of the cafeteria and he said "yes." There is no evidence other than this in the record as to his authority. The record was bare of any proof that Mr. Taylor was specially authorized to make admissions, that the admissions were part of the consideration of any contract, or that they were part of the res gestae.

The third and fourth assignments of error must therefore be sustained.

The fifth assignment of error relating to the alleged excessiveness of the verdict, need not be discussed in view of our disposition of the case.

Judgment reversed and new trial granted.