410 A.2d 1270

**Joseph P. FITZGERALD, Jr.**

v.

**Jack McCUTCHEON, City of Philadelphia, and Robert H. Foerderer Republican Club.**

**Appeal of CITY OF PHILADELPHIA.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1978.

Filed Sept. 28, 1979.

Petition for Allowance of Appeal Denied Jan. 8, 1980.

---

**2.** *See note 1, supra.*

Barry J. Grossman, Assistant City Solicitor, Philadelphia, for appellant.

Joseph Fitzgerald Furlong, Jr., Philadelphia, for appellee.

Before VAN der VOORT, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

Joseph P. Fitzgerald, Jr. was shot six times by Jack McCutcheon, his neighbor and an off-duty policeman. Fitzgerald instituted an action in trespass against McCutcheon, the City of Philadelphia, and the Robert H. Foerderer Republican Club and recovered a verdict against McCutcheon and the City of Philadelphia.[1] The court below granted the City's motion for new trial because it found that it was error to allow the jury to consider the issue of whether the City had been negligent in hiring McCutcheon.[2] The City's motion for judgment n. o. v., however, was denied, the court holding that the verdict could be sustained on principles of respondeat superior. The City appealed. We reverse.

In reviewing the denial of a motion for judgment n. o. v., the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the verdict

---

1. A compulsory nonsuit was entered by the trial court in favor of the Foerderer Republican Club.

2. Appellee did not take an appeal from the award of a new trial. However, our review of the record confirms the lack of evidence to support a finding of negligence in the hiring of McCutcheon.

winner. *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *Rost v. Wickenheiser*, 229 Pa.Super. 84, 323 A.2d 154 (1974). All conflicts in the evidence must be resolved in favor of the prevailing party. *Winkler v. Seven Springs Farm, Inc.*, 240 Pa.Super. 641, 359 A.2d 440 (1976). A judgment n. o. v. should only be entered in "a clear case where the evidence is insufficient to sustain a verdict . . ." and should not be granted if "the evidence on a material point presented an issue of fact for decision by the jury." *Eldridge v. Melcher*, 226 Pa.Super. 381, 386, 313 A.2d 750, 753 (1973).

On the evening of June 5, 1968, McCutcheon was off duty and had been off duty for that entire day. Although attired in the trousers of his police uniform, he had spent the evening cleaning the basement of his home. About 11:00 o'clock, P.M., he joined Fitzgerald on the porch of the adjacent apartment building where Fitzgerald resided. There the two men drank beer until one o'clock, A.M., when they determined to shoot a game of pool. Finding the neighborhood bar closed, they proceeded to the Foerderer Republican Club, where McCutcheon joined in playing a game of pool and both men continued to drink beer. McCutcheon became loud and argumentative and was asked to leave about 2:00 o'clock, A.M. The two men thereafter left the club and returned to their homes; but instead of retiring, McCutcheon announced that he wanted to go to Chinatown for breakfast. Appellee declined McCutcheon's invitation to accompany him. McCutcheon's wife, who had emerged from the house, also refused to go with her husband. An argument ensued between McCutcheon and his wife, during which he threatened to "blow your head off." During the confrontation, Mrs. McCutcheon asked Fitzgerald to remove the keys from the ignition of McCutcheon's vehicle, which Fitzgerald did. He delivered the keys to Mrs. McCutcheon and returned to his own apartment. A short time later McCutcheon began beating on the lower door to the building in which Fitzgerald's apartment was located and eventually broke it. Fitzgerald, concerned for the safe-

ty of his small son, went downstairs and onto the porch where McCutcheon demanded the return of his car keys. Appellee attempted to explain that he did not have them, and McCutcheon's wife confirmed that she had the keys. McCutcheon refused to accept this explanation and again demanded the keys, saying to appellee that he would "place him under arrest for stealing the keys." McCutcheon thereupon drew a gun and shot Fitzgerald six times. The gun used by McCutcheon was a .38 Colt with a 2″ barrel. It had not been issued to McCutcheon by the City and was not registered in his name at the police department.[3]

■■■ A master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment. *Lunn v. Yellow Cab Company,* 403 Pa. 231, 169 A.2d 103 (1961); *Potter Title and Trust Company v. Knox,* 381 Pa. 202, 113 A.2d 549 (1955); Restatement (Second) of Agency § 219. This liability of the employer may extend even to intentional or criminal acts committed by the servant. *Pilipovich v. Pittsburgh Coal Company,* 314 Pa. 585, 172 A. 136 (1934); *McMillen v. Steele,* 275 Pa. 584, 119 A. 721 (1923); Restatement (Second) of Agency § 231. Whether a person acted within the scope of employment is ordinarily a question for the jury. *Orr v. William J. Burns International Detective Agency,* 337 Pa. 587, 12 A.2d 25 (1940); *Straiton v. Rosinsky,* 183 Pa.Super. 545, 133 A.2d 257 (1957). Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment. *Lunn v. Yellow Cab Company,* supra. See also: *Straiton v. Rosinsky,* supra.

3. The gun was actually owned by and registered to another police officer. McCutcheon testified that at the time of the shooting, he was in the process of buying it from the other officer.

The Restatement (Second) of Agency, § 228, defines conduct within the scope of employment as follows: "(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

■ When this principle is applied to the facts of the instant case, it becomes clear beyond peradventure of a doubt that McCutcheon's act of shooting his neighbor was outside the scope of his employment. His acts were motivated by reasons personal to himself and did not further the purpose of his employment as a policeman. He was off duty and not then subject to the right of his employer's control. His act was so outrageous, so criminal, and so incapable of anticipation by his employer, that it must be held as a matter of law to exceed the scope of McCutcheon's employment. To hold a municipality liable for conduct of an off duty policeman under the circumstances of this case on a theory of respondeat superior would be unreasonable and would exceed the legitimate legal and social purposes which sustain the doctrine.

Appellee argues that McCutcheon had been authorized, but not required, to carry a gun while off duty and that in an emergency he could be summoned to immediate service. This argument, if carried to its ultimate conclusion, would require the City to respond in damages for injuries caused by the negligent conduct of all off duty police officers. We decline to impose such an onerous burden.

■ Appellee also refers to an out of court declaration made by McCutcheon in response to a departmental inquiry

that he had been taking police action at the time he shot Fitzgerald. The statement was made after the incident and during police interrogation of McCutcheon. Not only did this represent the legal conclusion of the witness, but as an out of court statement it was ineffective to expand the scope of the witness' employment. *Bunting v. Goldstein*, 283 Pa. 356, 129 A. 99 (1925); *Midland Credit Company v. White*, 175 Pa.Super. 314, 104 A.2d 350 (1954); *Campbell v. G. C. Murphy Company*, 122 Pa.Super. 342, 186 A. 269 (1936). See also: McCormick, Evidence, § 267 at p. 642 (2nd Edition 1972); Restatement (Second) of Agency, § 285.

The evidence, therefore, demonstrates unequivocally and inescapably that McCutcheon shot appellee, not in the line of duty as a city policeman, but solely because of a personal animosity generated by a full day and night of off duty activities. For such conduct, the City of Philadelphia cannot be held responsible.

Reversed and remanded for the entry of judgment n. o. v. in favor of appellant.