**Lisa M. COSTA, Appellant,**

v.

**ROXBOROUGH MEMORIAL
HOSPITAL and Ronald
Krier, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 14, 1998.
Filed Feb. 27, 1998.
Reargument Denied May 8, 1998.

Arthur B. Keppel, Philadelphia, for appellant.

L. Rostaing Tharaud, Philadelphia, for Roxborough Memorial Hosp., appellee.

Before KELLY, J., MONTEMURO *, Judge, and CIRILLO, President Judge Emeritus.

MONTEMURO, Judge:

Appellant, Lisa Costa, appeals from the April 23, 1997 Order of the Philadelphia Court of Common Pleas granting summary judgment in favor of Appellee, Roxborough Memorial Hospital, for claims of vicarious and direct liability arising from injuries Appellant sustained during an altercation with a hospital employee. Because we find that Appellant has failed to present evidence of facts essential to her causes of action, we affirm.

The underlying negligence claim stems from an incident which took place at Roxborough Memorial Hospital between Appellant and hospital employee, Ronald Krier, on October 21, 1993. At that time, Appellant was employed by Stanley Smith Security, Inc.

* Retired Justice assigned to Superior Court.

and assigned to Roxborough Hospital as chief of security. As part of her job, Appellant was to provide security services to the Hospital by "observing and reporting" events and conducting investigations. In the months prior to the October 1993 incident, Appellant and her security staff were investigating the behavior of Ronald Krier, a laundry worker at the Hospital. Although she never directly observed such conduct, Appellant suspected that Krier was using illegal drugs at work based upon his "erratic" behavior and demeanor; e.g., he would reportedly leave the Hospital during working hours and later return exhibiting "apparent alterations in his mood." (Appellant's Brief at 5).

On October 21, 1993, Appellant received information suggesting that Krier would engage in a drug transaction later that day. Upon observing Krier's actions, Appellant and her staff saw Krier execute what was believed to be a drug deal outside the hospital. Following Krier's return to the Hospital, Appellant notified William Kaiser, the Hospital's vice president of support services, who instructed Appellant to bring Krier to the office of Carol Brill, director of personnel, where Krier would be asked to submit to a urinalysis. Krier was accompanied by his supervisor Kim Taylor, Appellant, and two other security personnel. Appellant directed one of the security men to remain in the corridor outside of Brill's office, and, as the four remaining individuals entered the small office, Brill requested that the second security person wait outside; this was done out of concern for Krier's privacy, as well as the limited space available in the office. To further limit any distraction, Brill also requested that Appellant turn off her two-way radio which was continually broadcasting reports

from other security personnel in the Hospital.

Once in the office, Brill took her seat behind the desk, as Krier and Taylor settled into the two remaining seats opposite Brill across the desk. Because of the tight quarters, Appellant stood by the door behind Taylor and Krier. After explaining to Krier the circumstances and the observations made by the security personnel, Brill asked Krier to undergo a urine test for drug screening. Krier immediately became agitated, and, after initially protesting, he reluctantly agreed to take the test. After Brill exited the office to make arrangements, Krier began to verbally abuse Taylor and Appellant, and accused Appellant of being out to get him. Krier then stood from his chair, and with both hands, grabbed Appellant who was standing in front of the door. Appellant told Krier to remove his hands, and Krier responded by pushing Appellant against the door and shoving her into a book shelf before fleeing the office; he never returned to work at the Hospital. Although it is not detailed in her brief, Appellant allegedly "suffered serious and permanent injury as a result of this contact," (Appellant's Brief at 8), and commenced suit against the Hospital by writ of summons on August 28, 1995.[1] Appellant filed a complaint in September 1995 alleging vicarious and direct liability, as well as a claim for punitive damages.[2] Appellee filed a number of preliminary objections, and, by Order dated December 1, 1995, the trial court sustained the preliminary objections as to Appellant's claim for punitive damages, dismissing that claim with prejudice. On March 19, 1997, Appellee filed a motion for summary judgment, which was granted by Order dated April 23, 1997. Following the denial of her petition for reconsideration, Appellant filed the instant appeal.[3]

1. Appellant also filed a criminal complaint against Krier, in which he was charged with simple assault, aggravated assault, and recklessly endangering another person. After a bench trial on May 12, 1994, he was found not guilty of all charges.

2. The claim for punitive damages was included in an Amended Complaint filed October 16, 1995. We note that although Appellant's complaint also alleged claims against Ronald Krier, Appellant admittedly failed to effectuate proper service upon Krier, and, therefore, for purposes

of the instant appeal, those claims have been abandoned.

3. In a letter to Appellant's counsel dated July 14, 1997, this Court inquired as to whether an appeal from the order granting summary judgment in the instant case was premature under Pa. R.A.P. 341(b)(1), which provides that a final order is one which disposes of all claims or all parties, since the order is silent as to the disposition of Appellant's claims against Krier. Counsel responded by admitting that Krier was never properly served, and, therefore, Roxborough Me-

Appellant claims that the trial court erred in granting summary judgment where there was sufficient evidence to find that Appellee "was liable to her both for its direct negligence in failing to discharge its duty to provide a safe working environment and as *respondeat superior* for the actions of its employee." (Appellant's Brief at 10). Appellant also challenges the trial court's grant of Appellee's preliminary objections to her claim for punitive damages.

Summary judgment is properly granted "if, after the completion of discovery relevant to the motion, . . . an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). It is well established that when reviewing a grant of summary judgment, we must view the record in the light most favorable to the non-moving party, and resolve all doubts as to a genuine issue of material fact against the moving party. *Ertel v. Patriot–News Co.*, 544 Pa. 93, 98–99, 674 A.2d 1038, 1041 (1996). We will reverse a grant of summary judgment only where there has been an error of law or clear abuse of discretion. *Troxel v. A.I. Dupont Institute*, 450 Pa.Super. 71, 675 A.2d 314, 316 (1996).

First, Appellant contends that Roxborough Hospital is vicariously liable for the abusive actions of its employee, Krier, under the theory of *respondeat superior.*

■ It is well settled that an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment. *Fitzgerald v. McCutcheon*, 270 Pa.Super. 102, 410 A.2d 1270, 1271 (1979). In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. *Id.* The conduct of an employee is considered "within the scope of employment" for purposes of vicarious liability if:

(1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Id.* 410 A.2d at 1272 (citing Restatement (Second) of Agency, § 228).

■ The determination of whether a person was acting within the scope of his employment is typically a question for the jury. *Straiton v. Rosinsky*, 183 Pa.Super. 545, 133 A.2d 257, 259 (1957). "Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law." *Fitzgerald*, 410 A.2d at 1272. *See McMaster v. Reale*, 177 Pa.Super. 429, 110 A.2d 831, 832 (1955)(holding that "a master is not liable for the willful misconduct of his servant, and that such willful misconduct, while it may be within the course of the employment, is not within the scope thereof."). Moreover, our courts have held that an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment. *Id. See also Potter Title & Trust Co. v. Knox*, 381 Pa. 202, 207, 113 A.2d 549, 551 (1955)(finding acts committed by employee in an outrageous or whimsical manner are not within the scope of employment).

In the instant case, the trial court found that since "Krier's assault was motivated by reasons personal to himself and did not further the purpose of his employment in the laundry department," he was not acting within the scope of employment. (Trial Ct. Op. at 3). Appellant argues that although at the time of the assault, Krier was not "engaged in the performance of his job as a laundry worker, he nevertheless was acting in accor-

morial Hospital was the only proper party before the trial court, and its order granting summary judgment in favor of the Hospital effectively disposed of all of Appellant's claims in the instant

matter. We agree, and find that this Court has jurisdiction to entertain this matter as an appeal from a final order.

dance with [the Hospital's] internal policies" regarding submission to a drug test. (Appellant's Brief at 17). Therefore, Appellant essentially claims that because the Hospital had the ability to control Krier's actions in that he was asked to submit to a drug test pursuant to Hospital policy, his reaction to this request and subsequent assault were committed within the scope of his employment. For support, Appellant relies upon *Iandiorio v. Kriss & Senko Enterprises, Inc.*, 512 Pa. 392, 517 A.2d 530 (1986).

In *Iandiorio*, a gas station attendant brought a vicarious liability action against a construction company-employer for injuries he sustained when, with gasoline on his clothing, he entered an area designated for smoking, and a construction worker-employee lit a cigarette which ignited the attendant's clothing and caused serious burns to his body. *Id.* at 396, 517 A.2d at 532. The trial court granted a compulsory non-suit, holding that as a matter of law, the employer, whose company was contracted by the gas station to complete renovations, was not liable since the personal act of smoking was not within the employee's scope of employment. *Id.* at 398, 517 A.2d at 533. Our Supreme Court reversed and distinguished between "mere permission given employees to perform personal acts during the workday and more active control on the part of the employer over its employees' personal acts." *Id.* at 397, 517 A.2d at 533.

The Court reasoned that the extent of control exercised by an employer over the personal acts of its employees is an important factor to consider when determining the scope of employment and whether the employer should be held liable to a third party for any injuries resulting from the employee's personal act. *Id.* Upon review, the Court found that because the employer "not only knew that its employees smoked at work, but, in fact, dictated where employees should take breaks and smoke," the employer exhibited sufficient control over the employees' conduct so as to bring the personal act of smoking within the scope of employment. *Id.* at 399, 517 A.2d at 534.

■ The instant case is clearly and readily distinguishable from the circumstances found in *Iandiorio*, and, as such, Appellant's reliance upon this case is misplaced. *Iandiorio* held that an employer can be found liable for those personal acts of its employees *over which it exercised control*, assuming, of course, that the claimant's injury arose from some negligence related to the controlled act. Here, however, the mere fact that the Hospital had the authority to require Krier's submission to a drug test does not subject it to vicarious liability for all reactionary and intentional "personal acts" by Krier. Indeed, unlike in *Iandiorio*, the injury to Appellant did not directly result from the act which was "controlled" by the employer, i.e., the injury did not result from any negligence related to the drug test. Further, viewed under the applicable principles governing agency and vicarious liability, *see Fitzgerald, supra*, it is clear that Appellant's claim must fail.

The act for which Appellant seeks to hold the Hospital liable is the intentional assault committed by Krier. However, it is undisputed that Krier was a laundry worker whose responsibilities included collecting, sorting, and distributing laundry throughout the Hospital. Appellant fails to produce any evidence suggesting that Krier's act was even remotely related to the kind and nature of employment that he was employed to perform, since in no way did his employment require or even anticipate the use of force against another person. *Cf. Howard v. Zaney Bar*, 369 Pa. 155, 85 A.2d 401, 402 (1952)(holding that employer-bar owner was not liable for shooting of patron by employee-bartender; although part of bartender's job responsibility was to use reasonable means to maintain order in the bar, the shooting of a patron constituted a departure from his scope of employment since it was an unreasonable, excessive, and gross abuse of his given authority).

Moreover, before Appellant can succeed upon her vicarious liability claim, she must also put forth evidence indicating that Krier's act was actuated by a purpose to serve his employer. Here, however, it is clear that although the Hospital staff requested that Krier submit to a drug test pursuant to their policy, Appellant's evidence suggests that Krier's subsequent assault was not commit-

ted in furtherance of his employment, but, rather, in retaliation *against* Hospital policy, and in anger arising from his belief that Appellant was "out to get him." This same evidence also supports the conclusion that Krier's attack upon Appellant was rooted in personal animus, and, therefore, not attributable to his employer.

Finally, Appellant has also failed to put forth sufficient evidence to support the fourth prong of the "scope of employment" test: Appellant must show that "if force is intentionally used by the employee against another, the use of force is not unexpectable by the employer." *Fitzgerald,* 410 A.2d at 1272. Appellant contends that because it was suspected that Krier just completed a drug deal and may have ingested some drugs, the Hospital personnel "knew or should have known of the risk [that] Krier might act violently in trying to avoid the urinalysis." (Appellant's Brief at 18–19). Appellant also claims that she "expressly advised ... Brill that Krier posed a threat of violence under the circumstances of the meeting in her office." (*Id.* at 19).

Although she urges this Court to find that Krier's physical assault should have been anticipated by the Hospital, Appellant fails to cite to any portion of the record which supports her allegations. In fact, our independent review of the record fails to reveal any evidence indicating that Appellant or her staff *ever* observed Krier ingest any drugs, especially on the day in question. In fact, other than his changes in mood, Appellant fails to point to any evidence suggesting that Krier was potentially violent, and admits that she never personally observed nor received any reports from others indicating that Krier used drugs at work. Rather, in conjunction with her unfounded belief that Krier was abusing illegal drugs, Appellant stated in her deposition that she believed Krier could be potentially dangerous based upon reports from police that there was an "upswing in

heroin and crack use in the area." (N.T. 12/10/96 at 46). This is simply not enough to charge the Hospital with knowledge of Krier's alleged threat of violence. Thus, without the requisite evidentiary support, Appellant fails to meet her burden of establishing facts necessary to sustain her cause of action for vicarious liability.

Upon review of the evidence presented by Appellant, it becomes clear that the assault committed by Krier is precisely the type of act which is so willful, excessive, outrageous, and without responsibility, as to exceed his scope of employment, and for which as a matter of law, the Hospital cannot be found vicariously liable.

■ Perhaps recognizing the inadequacies regarding her assertion of vicarious liability, Appellant alternatively seeks to hold Appellee negligent under a theory of direct liability. To this end, Appellant claims that there was sufficient evidence from which to conclude that Appellee was directly negligent in failing to provide Appellant with a safe work environment, as well as failing to have proper and adequate policies and procedures for hiring and supervising its employees. Appellant's allegation is based upon Restatement (Second) of Torts, § 317.[4]

Section 317 provides that:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

---

4. We admonish Appellant for violating Pa.R.A.P. 2119 by failing to cite to any applicable, binding authority on this issue (the brief only provides citation to a federal district court opinion), and merely including a passing reference to Section 317 (miscited in the brief as " § 371") within a string cite without pertinent discussion. *See* Pa. R.A.P. 2119(a)(providing that argument section of brief should include "discussion and citation of authorities as deemed pertinent."). However, because our review of this issue is not hampered by Appellant's briefing failures, in the interests of judicial economy, we will address her claim.

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should have reason to know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts, § 317 (1965). *See* Comment c, § 317 (stating that an employer may subject himself to liability under this Section "by retaining in his employment servants who, *to his knowledge,* are in the habit of misconducting themselves in a manner dangerous to others.")(emphasis added).

Appellant claims that because Appellee was aware of Krier's "reputation for drug use and of his criminal history," and the fact that he was suspected of executing a drug deal that day, there was reason to believe that it would be necessary to control Krier during the meeting at Brill's office. (Appellant's Brief at 22). Thus, Appellant contends that Appellee "knew it had the opportunity and ability to control him but refused to do so." (*Id.*). Further, Appellant states that in failing to check for prior criminal history before hiring an employee such as Krier, Appellee was negligent in its hiring procedures.[5]

As we have determined that Krier's assault was an intentional act committed outside the scope of his employment, for purposes of liability under Section 317, the disputed issue becomes whether Appellee knew or had reason to know of Krier's violent propensity and the necessity to control him, in addition to the opportunity and ability to do so in order to prevent him from intentionally harming others. *See* Comment a, § 317 (stating § 317 not applicable if employee is acting within the scope of employment). The record reveals that Appellant submitted two to three reports to vice president Kaiser regarding Krier's "erratic" behavior, and Appellee was aware that Krier had been convicted of retail theft during his employment at the hospital. However, retail theft is not a violent crime, and conspicuously absent from the evidence is any indication of Krier's dangerous or violent propensities, or

any evidence suggesting that a more thorough hiring procedure would have revealed such information.

In fact, other than vaguely stating that Krier's mood would fluctuate, Appellant never explains what "erratic" behavior Krier allegedly exhibited, and admitted in her deposition that prior to the assault, she had no knowledge that Krier had any violent propensities. (N.T. 12/10/96 at 33). She also never observed him partake in any drugs or alcohol, nor did she ever receive any reports from others indicating that Krier engaged in such behavior at work. (*Id.* at 42). It is clear that Appellant's claims are based upon speculation. More to the point, Appellant utterly fails to provide any evidence supporting the allegation that *Appellee* knew or should have known of a necessity to control Krier in order to prevent the assault; indeed, the evidence shows that not even she, as chief of security, was aware of Krier's propensity for violence.

As evidence of Appellee's failure to provide a safe working environment, Appellant points to Brill's refusal to permit the presence of additional security personnel in the office during the meeting, and requesting that Appellant turn off her two-way radio. The record reveals, however, that Brill's actions were done out of concern for Krier's privacy and an attempt to inhibit distraction from the chattering security radio. Appellee cannot be faulted for failing to protect against an assault for which it had no knowledge or reason to know would occur. Further, we cannot overlook the fact that although Appellant claims Appellee failed to adequately supervise Krier and provide her with a safe work environment, her own existence as chief of security serves to contradict this claim, as it is in the pursuit of a safe environment that the Hospital sought the assistance of such security personnel.

Reviewing the record in the light most favorable to Appellant, there is simply no evidence that prior to October 1993 Appellee knew or had reason to know of any actions on Krier's part which indicated a propensity

---

**5.** We admonish Appellant again for failing to provide citation to record evidence supporting

the statements in her brief.

for violence or physical assault upon others, or that a more extensive hiring procedure would have uncovered such behavior. *See Dempsey v. Walso Bureau, Inc.,* 431 Pa. 562, 246 A.2d 418 (1968)(affirming directed verdict in favor of employer upon direct liability claims from injured third party who alleged, *inter alia,* employer was negligent in supervision and hiring procedures; employee's propensity to engage in frequent physical "horseplay" prior to the incident in question was not sufficient to provide knowledge of any violent propensities or dangerous conduct). Thus, Appellant has failed to allege sufficient facts supporting her cause of action for direct liability.

Appellant also claims that the trial court erred in sustaining Appellee's preliminary objections and dismissing her claim for punitive damages. Our review of an order granting preliminary objections is limited to determining whether, assuming all material facts set forth in the complaint are true, the law says with certainty that no recovery is possible. *County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd.,* 544 Pa. 541, 547, 678 A.2d 355, 358 (1996).

 Punitive damages are proper only if an actor's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 493, 587 A.2d 702, 704 (1991). It is axiomatic, however, that a claim for punitive damages arises out of the underlying cause of action and, therefore, absent a viable cause of action, an independent claim for damages cannot stand. *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 101, 555 A.2d 800, 802 (1989). In support of her claim for punitive damages, Appellant contends that Appellee exhibited a wanton disregard for her rights when the Hospital staff ignored her "prior warnings of the danger Krier posed to the hospital," and, with the knowledge that Krier was a suspected drug dealer who reluctantly agreed to a drug test, she was left alone in the room with Krier and his supervisor

"without any of the [requested] security measures." (Appellant's Brief at 27).

 Appellant's claim is merely a reiteration of that which is already discussed in her first two issues. We note that her "prior warnings" consisted of two to three reports which listed unsupported allegations of drug use based upon observations of Krier's behavior which did not indicate any propensity for violence. Moreover, since Brill's office was very small, it could only accommodate a limited number of people and, certainly, in light of the lack of information suggesting that Krier was dangerous, additional security personnel were not needed in the office itself, as the presence of the chief of security was reasonably sufficient.[6] Taking all of Appellant's pleaded facts as true, there is absolutely no evidence indicating that Appellee willfully or recklessly exposed Appellant to a known risk of assault by Krier. Therefore, we find that the court properly sustained Appellee's preliminary objections.

For the reasons set forth above, we conclude that Appellant has failed to set forth sufficient facts necessary to sustain her cause of action for both vicarious and direct liability, as well as her claim for punitive damages. As a result, summary judgment was appropriate.

Order affirmed.

---

6. We remind Appellant that although the two additional security personnel were not in Brill's office, they were, quite literally, right outside the office door; one of whom was "stationed" there at the direction of Appellant.