**Street v. First Student, Inc.**

C.P. of Northampton County, NO C-48-CV-2011-8897

*Joseph P. Lenahan*, for plaintiffs.
*Paul Troy* and *Ralph J. Bellafatto*, for defendants.

BARATTA, *J.*, October 8, 2013—

## ORDER OF COURT

And now, this day of October, 2013, upon consideration of defendants, First Student, Inc. and David P. Quier, Jr. as administrator of the estate of Kelly A. Quier, deceased's, preliminary objections to the amended complaint, it is hereby ordered the defendants' preliminary objections in the nature of a demurrer with regard to allegations of punitive damages are sustained in part and overruled in part. As the plaintiffs have failed to allege sufficient facts in their amended complaint to justify the imposition of punitive damages against defendant First Student, any demands for punitive damages against defendant First Student in count III A of the amended complaint are hereby dismissed with prejudice.

It is further ordered that the defendants' preliminary objections in the nature of a demurrer with regard to count III B of the amended complaint are overruled.

## STATEMENT OF REASONS

### Facts and Procedural History

The instant matter arose as a result of a severe motor vehicle collision that occurred on May 31, 2011. Kelly A. Quier drove a school van for defendant First Student, Inc. Kelly A. Quier had only one passenger on the day of the collision: a child, the daughter of plaintiffs Patricia Wetzel and John Wetzel. Kelly A. Quier's van collided with

plaintiff Richard Street's vehicle, which was traveling in the opposite direction, when she crossed the double yellow lines into the opposing traffic's lane. Kelly A. Quier died as a result of this collision. All of the plaintiffs allegedly sustained bodily and/or pecuniary injuries as a result of the vehicle collision.

Plaintiffs Richard Street and Mercedes Street commenced this action by filing a praecipe for writ of summons on September 14, 2011, naming defendant First Student, Inc. ("First Student") as the sole defendant. On February 3, 2012, plaintiffs Richard Street and Mercedes Street filed a complaint against defendant First Student and defendant David P. Quier, Jr. as administrator of the estate of Kelly A. Quier (hereinafter collectively referred to as "decedent/defendant Quier"). The defendant filed preliminary objections to the complaint on February 20, 2012, seeking to strike all allegations of recklessness as well as count III of the complaint. In response to the preliminary objections, the plaintiffs agreed to a stipulation and tolling agreement, whereby the plaintiffs withdrew their claims for punitive damages and for negligent hiring/supervision without prejudice, subject to subsequent discovery. On April 23, 2012, we approved of this stipulation and tolling agreement.

On January 14, 2013, plaintiffs Patricia Wetzel and John Wetzel, individually and as natural parents of R.W., a minor, filed a complaint against defendant First Student and decedent/defendant Quier. On January 25, 2013, the above-captioned actions were consolidated for the purposes of discovery only.

On May 15, 2013, this court granted plaintiffs Richard Street and Mercedes Street's motion to amend complaint.

On May 17, 2013, this court approved of the parties' stipulation to file amended complaint under Seal. Plaintiffs Richard Street and Mercedes Street subsequently filed their amended complaint under seal.

On June 10, 2013, the defendants filed preliminary objections to the plaintiff's amended complaint, and an accompanying brief. The defendants made three objections: (1) motion to strike all allegations related to improperly obtained medical records; (2) motion to strike all allegations of recklessness; and (3) motion to strike count III B from the amended complaint (negligent hiring/supervision). On August 22, 2013, plaintiffs Richard Street and Mercedes Street filed a memorandum of law in opposition to defendants' preliminary objections to plaintiffs' amended complaint, On September 12, 2013, plaintiffs Patricia Wetzel and John Wetzel filed plaintiffs' brief in opposition to defendants' preliminary objections to plaintiffs' amended complaint, in which they adopted the Street plaintiffs' brief and joined in all of their arguments.

This matter was placed on the September 3, 2013 argument list for a determination based on oral argument and briefs. At the oral argument, the defendants stated their intention to withdraw their first preliminary objection; as such, we decline to rule on the defendants' motion to strike all allegations related to improperly obtained medical records. The plaintiffs also agreed to voluntarily strike any reference to decedent/defendant Quier's alleged cellphone usage in their amended complaint, as that theory was debunked during discovery.

### Legal Standard

In ruling on preliminary objections in the nature of a demurrer, the trial court may consider no testimony or

evidence outside of the complaint. *Mellon Bank, N.A. v. Fabinyi*, 650 A.2d 895, 899 (Pa. Super. Ct. 1994) (citation omitted). In ruling upon a demurrer, we must accept as true all well-pleaded allegations and material facts averred in the complaint as well as all reasonable inferences deducible therefrom. *Wurth v. City of Phila.*, 584 A.2d 403, 407 (Pa. Commw. Ct. 1990) (citation omitted). However, when ruling on preliminary objections, although a court must accept as true all clearly-pled facts, there is no such requirement as to a pleader's legal conclusions or mere averments of law. *Santiago v. Pa. Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238-39 (Pa. Super. Ct.1992) (citations omitted).

In the face of a demurrer, a complaint should only be dismissed in cases that are free and clear from doubt. *Id.* at 1238. If any theory of law will support a claim, preliminary objections should not be sustained as any doubt should be resolved against the objecting party. *Foster v. Peat Marwick Main & Co.*, 587 A.2d 382, 384 (Pa. Commw. Ct. 1991); *Ambrose v. Cross Creek Condos.*, 602 A.2d 864, 869 (Pa. Super. Ct. 1992). In order to grant a demurrer, it must be certain from the face of the complaint that the claims will not support recovery under any legal theory. *Mellon Bank*, 650 A.2d at 899; *Eckell v. Wilson*, 597 A.2d 696, 698 (Pa. Super. Ct. 1991), *appeal denied*, 607 A.2d 253 (Pa. 1992) (citations omitted).

## Discussion

### A. Motion to Strike All Allegations of Recklessness

This preliminary objection is actually an attack on count II, in which the plaintiffs seek punitive damages against decedent/defendant Quier, alleging reckless, willful and wanton conduct.

The function of punitive damages in Pennsylvania is to deter and punish extreme behavior that is outrageous because of a defendant's evil motive or reckless indifference to the rights of others. *See Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963); *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1096 (Pa. 1985); Section 908(2) of the Restatement (Second) of Torts. The Pennsylvania Supreme Court embraced this guideline in *Feld v. Merriam*, and found that "punitive damages must be based on conduct which is malicious, wanton, reckless, willful, or oppressive." 485 A.2d 742, 747-48 (Pa. 1984).

In determining whether to impose punitive damages, a court should evaluate the state of mind of the actor. *Id.* at 748. Punitive damages "may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447 (Pa. Super. Ct. 1987). Instead, the outrageous conduct "must show the actor's evil motive or reckless indifference to the rights of others." *Hess v. Hess*, 580 A.2d 357 (Pa. Super. Ct. 1990). As a result, "in deciding whether punitive damages should be assessed, the nature of the tortfeasor's act itself, together with his motive, the relationship between the parties and all other attendant circumstances should be taken into account." *Martin*, 494 A.2d at 1096.

In *Martin*, *supra*, the Pennsylvania Supreme Court analyzed Section 500 of the Restatement of Torts (Second) in determining which type of reckless conduct would justify the imposition of punitive damage:

Comment *a* to Section 500 describes two distinct types of reckless conduct which represent very different mental states: (1) where the actor knows, or has reason

to know...of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk; and (2) where the actor has such knowledge or reason to know of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.

*Id.* at 1097.

The distinction between the first and second type of reckless conduct is critical in determining what facts justify punitive damages, because the first type of reckless conduct described in Section 500 "demonstrates a higher degree of culpability than the second on the continuum of mental states which range from specific intent to ordinary negligence," only the first type of reckless conduct described is sufficient to create a jury question on the issue of punitive damages under Pennsylvania law. *Id.* As a result, "an appreciation of the risk is a necessary element of the mental state required for the imposition of [punitive] damages." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005).

In Pennsylvania, therefore, "[a] punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* (citing *Martin, supra,* at 1097-98). Moreover, punitive damages "are not justified where the defendant's mental state rises to no more than gross negligence." *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702 (Pa. 1991). Finally, "there is no per

se prohibition against imposing such punitive damages against an estate." *G.J.D. by G.J.D. v. Johnson*, 713 A.2d 1127 (Pa. 1998).

The plaintiffs seek punitive damages against both of the defendants, separately, in their amended complaint. In paragraph 48, the plaintiffs aver that decedent/defendant Quier "manifested reckless indifference to the safety of her student passengers and other motorists" by "using medications which impaired her physically and mentally, and which likely accounted for her sudden action of leaving her own lane of travel and driving directly into the path of oncoming traffic" and failing to disclose health conditions that would have disqualified her from driving. This averment meets the standard for reckless indifference because the plaintiffs allege that decedent/defendant Quier knew, or should have known, of the dangers of driving with certain health conditions or on certain medications, but acted in conscious disregard of this knowledge by allegedly failing to disclose disqualifying health conditions and medications. With regard to claims against decedent/defendant Quier, therefore, the plaintiffs aver sufficient facts to justify punitive damages.

The plaintiffs separately seek punitive damages against defendant First Student in paragraph 56 of their amended complaint, which alleges vicarious liability, where plaintiffs allege that "Defendant First [Student] is also vicariously liable for all punitive damages assessed against its employee, Decedent/Defendant Quier, for the reasons set forth above, by operation of *Shiner v. Moriarty*, 706 A.2d 1228 (Pa. Super. Ct. 1998)." As such, the plaintiffs suggest that they are entitled to punitive damages against defendant First Student solely on the basis of vicarious liability. In fact, plaintiffs did not allege separate facts

supporting punitive damages against defendant First Student.

The *Shiner* case relied upon by plaintiffs to support its claim against both defendants involved a business relationship between marital couples which disintegrated and spawned significant litigation. The Shiners eventually prevailed in the underlying litigation brought by their co-partners, Mr. and Mrs. Moriarty. Apparently, the Moriartys pursued several baseless and wholly unreasonable legal theories against the Shiners. After the Shiners prevailed, they brought claims for abuse of process and punitive damages against Mr. and Mrs. Moriarty and their legal counsel. Apparently, based on the record, Mr. Moriarty controlled and made the decisions related to the litigation for both he and his wife.

The *Shiner* court found it possible that "punitive damages may be awarded on the basis of vicarious liability." *Id.* Further, the court noted that there is no requirement in Pennsylvania "that an agent commit a tortious act at the direction of his principal, nor must the principal ratify the act, in order for punitive damages to be imposed on him." *Id.* However, the court tempered its holding by stating "not every agency relationship...can form the basis of vicarious liability of the principal for the acts of the agent." *Id.* Interestingly, the court held that the defendant-wife was not vicariously liable for punitive damages because she did not exercise control over her husband's activities. *Id.* As such, *Shiner* stands for the legal proposition that where an agency relationship exists, vicarious liability for punitive damages is not automatic, and the type of agency relationship and the control exercised by the principal over the agent are critical factors in determining whether vicarious liability for punitive damages follows.

In *Fitzgerald v. McCutcheon*, the Superior Court of Pennsylvania discussed vicarious liability in the employment context. 410 A.2d 1270 (Pa. Super. Ct. 1979). In the employment context, "a master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment." *Id.* at 1271. The court cited Section 228 of the Restatement (Second) of Agency, which defines conduct within the scope of employment as follows:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable [sic] by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Id.* at 1272; Restatement (Second) of Agency § 228.

Here, plaintiffs allege that the reckless actions of the agent-decedent/defendant Quier — is that she falsified and/or left out information regarding her health and medications in her employment forms given to the principal — her employer, defendant First Student.

As such, plaintiffs aver that defendant Quier lied or misrepresented her condition to defendant First Student and failed to comply with defendant First Student's policies. *See* amended complaint at ¶ 60. Clearly plaintiffs allegations of reckless, willful, wanton and outrageous conduct were committed outside of Kelly Quier's scope of employment, unknown to the employer and not within the control of the employer. As such, defendant First Student should not be held vicariously liable for punitive damages based upon the conduct of decedent/defendant Quier.

Finally, we also note that defendant First Student lacked the requisite mental state to independently justify punitive damages. In paragraph 30 of the amended complaint, the plaintiffs allege that "Decedent/Defendant Quier willfully failed to disclose her health conditions to her employer. She also, in violation of company policy, failed to notify First Student of the prescription and non-prescription medications she was regularly using on or before the date of this collision." Defendant First Student cannot be found have acted with "reckless indifference," because it acted in accordance with the information provided to it by decedent/defendant Quier in implementing its policies and lacked the requisite mental state to justify punitive damages.[1]

Therefore, the defendants' preliminary objections in the nature of a demurrer with regard to allegations punitive damages are sustained in part and overruled in part. As the plaintiffs have failed to allege sufficient facts in their

---

1. During the oral arguments, the plaintiffs seemed to suggest that defendant First Student should have known that decedent/defendant Quier had health problems, especially sleep apnea, due to her weight. The plaintiffs failed to allege, however, that defendant First Student's policies fell short of state standards. As such, this allegation does not rise to the level of recklessness required to justify punitive damages.

amended complaint to justify the imposition of punitive damages against defendant First Student, any demands for punitive damages against defendant First Student in count III A of the amended complaint are hereby dismissed with prejudice. The claim for punitive damages brought against decedent/defendant Quier remains viable.

B. Direct Corporate Liability: Count III B of the Amended Complaint

The defendants argue in their preliminary objections that count III B of the amended complaint regarding negligent hiring/supervision should be dismissed with prejudice because defendant First Student already acknowledged that it would be liable for any damages proven at trial that are determined to be caused by the negligence of its employee, defendant Quier, under the doctrine of *respondeat superior*. The defendants seem to assert that claims under *respondeat superior* and direct corporate negligence cannot be brought together due to a high danger of prejudice, under *Holben v. Midwest Emery Freight System, Inc. and its progeny*. 525 F. Supp. 1224 (W.D. Pa.1981). In opposition, the plaintiffs argue that (1) they asserted the two causes of action against defendant First Student in the alternative, and (2) the holding in Holben is clearly distinguishable from the case at hand.

Pennsylvania case law supports presenting direct and vicarious theories of liability in a complaint in the alternative. In *Scampone v. Highland Park Care Center*, the Pennsylvania Supreme Court found that the theories of direct liability and vicarious liability "are grounded in distinct policies and serve complementary purposes in the law of torts, with the goal of fully compensating a victim of negligence in an appropriate case." 57 A.3d

582, 593 (Pa. 2012). Accordingly, direct liability is "when the plaintiff seeks to hold the defendant responsible for harm the defendant caused by the breach of a duty owing directly to the plaintiff," while "vicarious liability is a policy-based allocation of risk." *Id.* at 597. Further, the Pennsylvania Supreme Court "has also recognized that a corporation may also owe duties of care directly to a plaintiff, separate from those of its individual agents, such as duties to maintain safe facilities, and to hire and oversee competent staff." *Id.*

Generally, "to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to actual damages suffered by the plaintiff." *Id.* at 596. Pennsylvania has adopted section 213 of the Restatement of Agency (Second), which states:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> ...
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; or
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213; *see also Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 421 (Pa. 1968); *see*

*also Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107 (Pa. Super. Ct. 1998).

Additionally, holding an employer liable directly for the wrongful acts of its negligently-hired employee "comports with the general tort principles of negligence long recognized in this jurisdiction." *Heller*, 713 A.2d at 107. Unlike the doctrine of *respondeat superior*, "where the wrongful conduct of the employee is attributable to the master vicariously," direct liability provides "a remedy to injured third parties who would otherwise be foreclosed from recovery under the master-servant doctrine because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the master's business." *Id.* As a result, a plaintiff can include causes of action under the theories of both vicarious liability and direct liability in the alternative.

Defendant First Student relies upon *Holben* and its federal progeny to support its claim that plaintiffs should be precluded from advancing claims for vicarious liability and direct liability under two, separate and independent theories: *respondent superior* and negligent hiring/ supervision/entrustment. However, the federal cases cited by the defendant are easily distinguishable on the facts and, more importantly, do not support the legal theory advanced by the defendant.[2] Finally, the theory advanced by the defendant is at odds with recent holdings by the Pennsylvania Supreme Court, which has specifically held that the plaintiffs may bring these alternative causes of

---

2. For instance, the *Holben* court denied the defendant's motion for summary judgment to preclude alternative theories of negligence against the corporate defendant, and instead bifurcated the factual issues to avoid any prejudice at trial that might result from the contemporaneous introduction evidence for the alternative theories. *See* 525 F. Supp. at 1225.

action, pleading both vicarious liability and direct liability in the alternative.

Therefore, the defendants' preliminary objections in the nature of a demurrer with regard to count III B of the amended complaint are overruled.