**Jack KRAUSS and Cindy Brillman, Appellants**

**v.**

**D. Elmeda CLAAR, Shawn P. Sullivan, Esquire and Hollidaysburg Trust Company, Executor of the Estate of John E. Claar, Appellees.**

Superior Court of Pennsylvania.

Argued March 2, 2005.

Filed July 8, 2005.

Michael P. Robic, II, Pittsburgh, for appellants.

James R. Schadel, Pittsburgh, for Sullivan, appellee.

Before: FORD ELLIOTT,
MUSMANNO and LALLY–GREEN, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Jack Krauss and Cindy Brillman ("Plaintiffs") appeal from the Order denying their Motion to strike the judgment of *non pros* entered for failure to file a certificate of merit under the Pennsylvania Rules of Civil Procedure governing professional liability actions.[1] We reverse.

¶ 2 This action commenced in December 2001 by the filing of a Writ of Summons, in which Plaintiffs sought ejectment of D. Elmeda Claar ("Claar") and Hollidaysburg Trust Company ("Hollidaysburg Trust")[2] from certain property located in Blair and Bedford Counties. Subsequently, in September 2002, Plaintiffs filed a Complaint, to which Claar and Hollidaysburg Trust filed Preliminary Objections. On April 16, 2003, the trial court issued an Order allowing Plaintiffs to file an Amended Complaint. The trial court denied defense counsel's request that the court rule on the Preliminary Objections.

¶ 3 On June 4, 2003, Plaintiffs filed an Amended Complaint, in which they added Shawn P. Sullivan, Esquire ("Sullivan") as a defendant. In the Complaint, Plaintiffs set forth counts of breach of contract and ejectment against Claar; fraudulent concealment and breach of contract against Hollidaysburg Trust; tortious interference with contract against Sullivan; and negligent misrepresentation, intentional misrepresentation, promissory estoppel, and equitable estoppel against all of the defendants.

¶ 4 Claar and Hollidaysburg Trust filed Preliminary Objections to the Amended Complaint. The trial court dismissed all of the counts against Hollidaysburg Trust. The trial court also dismissed the counts of negligent misrepresentation, intentional misrepresentation, equitable estoppel, and ejectment against Claar, and granted and denied various other Preliminary Objections raised by Claar. Claar then filed an Answer to the Amended Complaint, as well as new matter and a counterclaim.

¶ 5 On August 29, 2003, Sullivan filed a Praecipe for entry of a judgment of *non pros,* alleging that Plaintiffs had asserted a professional liability claim against him, but had failed to file a certificate of merit within the time required by Pennsylvania Rule of Civil Procedure 1042.3. Plaintiffs filed a Motion to strike Sullivan's Praecipe, and moved for sanctions against Sullivan.[3] On February 3, 2004, the trial court entered an Order indicating that Rule 1042.3 of the Pennsylvania Rules of Civil Procedure required Plaintiffs to file a certificate of merit. The trial court stated that the effect of Plaintiffs' failure to file a certificate of merit "shall be addressed by the parties at a time and date to be scheduled by the Court Administrator's office . . . ." Trial Court Order, 2/3/04.

¶ 6 On April 1, 2004, the trial court entered an Order amending its February 3, 2004 Order, and denying Plaintiffs' Motion to strike the judgment of *non pros.*[4]

---

1. Pa.R.C.P. §§ 1042.1–1042.8.

2. Hollidaysburg Trust is the Executor of the Estate of John E. Claar ("the Claar Estate").

3. This document is not contained in the certified record, but the filing of the document appears in the docket entries.

4. The trial court's Order is appealable as of right under Pennsylvania Rule of Appellate

According to the docket entries, Plaintiffs filed Notices of appeal on April 14 and 15, 2004, and an amended Notice of appeal on April 23, 2004.[5]

¶ 7 The underlying dispute between the parties involved a bid by Plaintiffs to purchase nine parcels of real estate owned by Claar, the Claar Estate, and Michele Sirko ("Sirko").[6] Plaintiffs alleged in their Amended Complaint that Hollidaysburg Trust had distributed an "Advertisement for Bids" on these parcels of land. Amended Complaint, 6/4/03, at ¶ 8. On November 15, 2000, the Plaintiffs submitted a bid of $3,600,000 to Sullivan's law office with a cashier's check of $100,000 as a security deposit. *Id.*, ¶ 16. According to the Complaint, Sullivan and Bruce Erb of Hollidaysburg Trust informed Plaintiffs that their bid had been accepted and that Sullivan would immediately send out paperwork to establish an escrow account for the security deposit. *Id.*, ¶ 21. On November 22, 2000, Sullivan sent Plaintiffs a letter indicating that Sirko, the trustee of a trust established by the Claar Estate, had not appeared at the signing of the Agreement of Sale for the property. Sullivan further stated that he was enclosing a trust agreement and deed relating to the 218.44 acres "which is now in dispute." *Id.*, ¶ 26. Sullivan indicated that he would discuss, with one of the trust beneficiaries, having Sirko removed as a trustee, and execute an agreement to that effect. *Id.*

¶ 8 In December 2000, Plaintiffs had subsequent discussions with Sullivan. They agreed that the original settlement date of January 31, 2001, was now a "projected target date." *Id.*, ¶ 29. Plaintiffs explained to Sullivan that they needed to have a forester mark trees on the property, and take prospective buyers for tours, so that timbering could begin as soon as the Agreement of Sale was executed. *Id.*, ¶ 30. Plaintiffs told Sullivan that it was necessary for timbering to begin while the weather was still cold and the sap in the sugar maple trees was frozen, because that was the time when timber prices were at their highest. *Id.* Plaintiffs alleged that during December 2000, Sullivan informed them that he had received permission to remove Sirko as a trustee. *Id.*, ¶ 31.

¶ 9 After Plaintiffs and Sullivan agreed to various modifications, Plaintiffs signed the original Agreement of Sale. The modifications to the Agreement of Sale were memorialized in a separate Addendum. *Id.*, ¶ 39–40. Sullivan informed Plaintiffs that Claar had approved and would sign the Addendum. *Id.*, ¶¶ 41–42. Subsequently, Sullivan informed Plaintiffs that Sirko and her husband had prevented him from meeting with or talking to Claar. *Id.*, ¶ 43. Plaintiffs also alleged that Sullivan never filed a petition to remove Sirko as trustee, and that Sullivan began to solicit other buyers for the property in December 2000. *Id.*, ¶¶ 45, 48.

¶ 10 On January 9, 2001, Plaintiffs learned that Hollidaysburg Trust had not deposited their $100,000 check into an escrow account. Plaintiffs further asserted that the check was not deposited until January 25, 2001, and that they never received a fully executed escrow agreement from Hollidaysburg Trust. *Id.*, ¶¶ 49–52.

¶ 11 On January 9, 2001, Plaintiffs sent a letter to Sullivan asking if they could settle

Procedure 311(a)(1) (stating that orders refusing to strike off a judgment are appealable as of right).

**5.** The Notice of appeal documents are not included in the certified record.

**6.** The Complaint stated that Sirko is the daughter of John E. Claar. Amended Complaint, 6/4/03, at ¶ 9.

on eight of the parcels of land immediately and settle on the disputed parcel at a later date. *Id.,* ¶ 54. In a letter dated January 14, 2001, Plaintiffs again informed Sullivan of their need to begin timbering immediately. *Id.,* ¶ 57. However, Sullivan did not permit Plaintiffs' forester to survey the site until February 9, 2001. *Id.,* ¶ 59.

¶ 12 The closing for the disputed parcel occurred on February 23, 2001. *Id.,* ¶ 66. The parties agreed that, due to the breaches of the Agreement of Sale by the Defendants, Plaintiffs would no longer face the risk of losing their escrow money. *Id.,* ¶ 68. Sullivan requested that the Plaintiffs' money be left in the escrow account. *Id.,* ¶ 69. Plaintiffs agreed to leave $84,000 in the account if Sullivan would complete the paperwork necessary to modify the terms of the escrow agreement to reflect the parties' new agreement. *Id.,* ¶¶ 70–71. Plaintiffs alleged that Sullivan never completed the paperwork. *Id.,* ¶ 71.

¶ 13 From February 23, 2001 until April 30, 2001, Plaintiffs made efforts to proceed to closing on the other parcels, but their efforts were rejected by Sullivan and Claar. *Id.,* ¶ 75. Closing was postponed until October 15, 2001. Sullivan proceeded to a settlement on October 15, 2001, despite unresolved issues and the illness of Plaintiff Brillman. *Id.,* ¶ 112. Sullivan then declared Plaintiffs in default of the original Agreement of Sale. *Id.,* ¶ 113. Plaintiffs alleged that Defendants had unreasonably retained their escrow deposit. *Id.,* ¶ 116. In addition, Plaintiffs claimed that they had lost more than one million dollars due to the drop in timber prices as a result of the failure to close on January 31, 2001. *Id.,* ¶ 121.

¶ 14 On appeal, Plaintiffs raise the following issues:

1. Is a plaintiff required to file a certificate of merit in accordance with Pa. R.C.P. 1042.1, *et. seq.,* in an action against an attorney that is not based on professional negligence or malpractice?

2. Is a certificate of merit required to be filed in a tort action against an attorney in a case brought by plaintiffs who were not clients of the attorney, where the plaintiffs allege that the attorney acted intentionally and without privilege or justification, and outside the scope of his duties to his client, while tortiously interfering with the plaintiffs' contractual relations with the attorney's client?

3. Is the filing of a certificate of merit required in cases where, as here, the plaintiffs' cause of action accrued before the effective date of Pa.R.C.P. 1042.1 et seq., but the plaintiffs' case was filed afterward?

4. If the filing of a certificate of merit was required in this case, would the plaintiffs' failure to timely file a certificate of merit require dismissal of the plaintiffs' case against the attorney with prejudice or some lesser sanction?

*See* Brief of Appellants at 4.

¶ 15 Plaintiffs first contend that they were not required to file a certificate of merit under Rule 1042.1 *et seq.* because their claims against Sullivan are not based on professional negligence or malpractice. Plaintiffs assert that they neither sought nor received legal advice or assistance from Sullivan. Therefore, they could not have filed a professional liability claim against him.

¶ 16 The rules governing "Professional Liability Actions" are set forth at Rules 1042.1–1042.8 of the Rules of Civil Procedure. Rule 1042.1 provides that those Rules "govern a civil liability action in which *a professional liability claim is asserted* against a licensed professional." Pa.R.C.P. 1042.1(a) (emphasis added). The term "licensed professional" is defined as follows:

(1) any person who is licensed pursuant to an Act of Assembly as

  (i) a health care provider ...;

  (ii) an accountant;

  (iii) an architect;

  (iv) a chiropractor;

  (v) a dentist;

  (vi) an engineer or land surveyor;

  (vii) a nurse;

  (viii) an optometrist;

  (ix) a pharmacist;

  (x) a physical therapist;

  (xi) a psychologist; and

  (xii) a veterinarian.

(2) an attorney at law; and

(3) any professional described in paragraphs (1) and (2) who is licensed by another state.

Pa.R.C.P. 1042.1 (notes omitted). Under Rule 1042.6, "[t]he prothonotary, on praecipe of the defendant, shall enter a judgment of *non pros* against the plaintiff for failure to file a certificate of merit within the required time provided that there is no pending timely filed motion seeking to extend the time to file the certificate." Pa. R.C.P. 1042.6.

¶ 17 Plaintiffs' assertions on appeal raise the issue of what constitutes a professional liability claim. In addressing that issue, we consider the language of Rule 1042.3, which provides in pertinent part as follows:

(a) *In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard,* the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that *there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards* and that such conduct was a cause in bringing about the harm, or

. . .

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

. . .

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim....

Pa.R.C.P. 1042.3 (emphasis added).

¶ 18 Thus, the rules governing professional liability actions require a certificate of merit "[i]n any action based upon an allegation that a licensed professional deviated from an acceptable professional standard...." Pa.R.C.P. 1042.3. In such a case, the plaintiff must obtain a written statement, from "an appropriate licensed professional," that there is a reasonable probability "that the care, skill, or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards" and that "such conduct was a cause in bringing about the harm ...." Pa.R.C.P. 1042.3(a)(1). We conclude that this language of Rule 1042.3 defines a "professional liability claim." We must thus determine if the Plaintiffs' Amended Complaint asserted a "professional liability claim" against Sullivan. If the Amended Complaint did not set forth such a claim, then a certificate of merit under Rule 1042.3 was not required.

¶ 19 The pertinent allegations of the Amended Complaint are as follows. In their count of negligent misrepresentation, Plaintiffs alleged that Claar, Hollidaysburg Trust, and Sullivan:

—"misrepresented material facts under circumstances in which they should have known of the falsity of their representations;"

—"failed to use reasonable care in ascertaining the truth of their representations;" and

—"failed to independently verify facts that they represented to plaintiffs."

Amended Complaint, ¶¶ 132–35. Plaintiffs also alleged that Hollidaysburg Trust and Sullivan, "as agents of the sellers or acting in their capacities as brokers of the real estate at issue, owed a duty to plaintiffs to ascertain the truth of their representations and/or independently verify facts that they represented to plaintiffs." *Id.,* ¶ 136.

¶ 20 These allegations do not raise any claims concerning Sullivan's duties as a licensed professional attorney. In fact, the allegations include Sullivan, Claar, and Hollidaysburg Trust as the culpable parties. The only professional duty alleged is that of a broker of real estate. However, there is no allegation that Sullivan was a licensed broker of real estate, and real estate brokers are not one of the licensed professionals to which the rules governing professional liability actions apply. We therefore conclude that the allegations against Sullivan for negligent misrepresentation do not set forth a professional liability claim under Rule 1042.3.

¶ 21 Plaintiffs also set forth a claim of intentional misrepresentation against all of the defendants. Plaintiffs alleged that the defendants:

—"intentionally misrepresented ... material facts;"

—made misrepresentations "falsely, with knowledge of their falsity or recklessness as to whether they were true or false;" and

—made misrepresentations "with the intent of misleading plaintiffs into relying on them."

Amended Complaint, ¶¶ 144–46. These allegations do not set forth a claim that "a licensed professional deviated from an acceptable professional standard ...," as required by Rule 1042.3. There are no allegations in this count concerning "a licensed professional" or a "deviation from an acceptable professional standard." Thus, Plaintiffs' claim of intentional misrepresentation does not set forth a professional liability claim.

¶ 22 Plaintiffs asserted a count of promissory estoppel in their Amended Complaint, which was addressed to all of the defendants. Plaintiffs alleged that the defendants "made promises and representations ... to plaintiffs that defendants should have reasonably expected would induce action or forbearance on the part of plaintiffs." Amended Complaint, ¶ 164.

¶ 23 In their count of equitable estoppel against all of the defendants, Plaintiffs alleged that the defendants:

—"intentionally and/or negligently made misrepresentations of material facts ... to plaintiffs;"

—"intentionally and/or negligently failed to disclose material facts to plaintiffs ...;" and

—"knew or had reason to know that plaintiffs would justifiably rely on the misrepresentations and omissions of material fact ...."

Amended Complaint, ¶¶ 168–70.

¶ 24 None of the above allegations sets forth a claim that "a licensed professional deviated from an acceptable professional standard" as required by Rule 1042.3.

Thus, those allegations do not constitute a professional liability claim.

¶ 25 Plaintiffs also asserted a claim of tortious interference with contractual relations against Sullivan. Plaintiffs alleged in that count that they had a prospective contractual relationship with Claar and the Estate of John E. Claar, and that Sullivan "took purposeful action that was specifically intended to harm the existing relation, or to prevent a prospective relation from occurring." Amended Complaint, ¶¶ 180–81. Plaintiffs further alleged that Sullivan provided various assurances to them regarding the transaction, and made excuses for not proceeding with the closing, while "simultaneously searching for other buyers" for the property. *Id.*, ¶ 182–84. In addition, Plaintiffs asserted that Sullivan acted "without privilege or justification," and that Sullivan, as an agent of "a signatory party" to the Agreement of Sale, "was supposed to act in accordance with the parties' agreement and to treat plaintiffs in good faith and in a commercially reasonable manner." *Id.*, ¶ 186. Plaintiffs alleged that Sullivan "failed to act in accordance with his duties and responsibilities," and "engaged in self-dealing." *Id.*, ¶¶ 187–88.

¶ 26 The allegations of paragraphs 180–84 do not assert that "a licensed professional deviated from an acceptable professional standard." There is no reference or implication in those allegations to "licensed professionals" or "deviation from acceptable professional standards." Thus, these allegations do not set forth a professional liability claim.

¶ 27 The allegations of paragraphs 186–88 also do not assert a professional liability claim. First, the term "agent," as used in those paragraphs, does not fall within the types of licensed professionals included in Rule 1042.1(b). That fact, in itself, takes the allegations of paragraphs 186–88 out of the realm of professional liability claims. In addition, the remaining allegations do not allege that Sullivan deviated from the particular professional standards of a licensed professional attorney in his actions toward the Plaintiffs. The allegations that Sullivan "was supposed to act in accordance with the parties' agreement," "treat plaintiffs in good faith and in a commercially reasonable manner," "failed to act in accordance with his duties and responsibilities," and "engaged in self-dealing," involve Sullivan's actions as Claar's attorney, not as the Plaintiffs' attorney.

¶ 28 This fact is significant because, in Pennsylvania, with only a specified exception; a claim against an attorney for either legal malpractice or breach of an attorney-client agreement, must be asserted by the attorney's actual client. *See Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744, 748 (1983) (plurality); *Cost v. Cost*, 450 Pa.Super. 685, 677 A.2d 1250, 1253–54 (1996). The only exception to this rule is for a "narrow class of third party beneficiaries," specifically, for named legatees of a will, whose legacies have failed as a result of attorney malpractice. *Guy*, 459 A.2d at 746–52. Otherwise, the requirement of a relationship between the defendant attorney and the plaintiff client remains. *See Cost*, 677 A.2d at 1254; *see also Fiorentino v. Rapoport*, 693 A.2d 208, 212 (Pa.Super.1997) (holding that "in Pennsylvania, an individual who has taken part in an attorney-client relationship may sue his attorney for malpractice under either a trespass or assumpsit theory").

¶ 29 For the above reasons, we conclude that Plaintiffs were not required to file a certificate of merit. Thus, the trial court erred in denying Plaintiffs' Motion to strike the judgment of *non pros*, which was entered on the basis of their failure to file a certificate of merit. *See* Pa.R.C.P. 1042.6 (providing for the entry of a judg-

ment of *non pros* when a plaintiff fails to file a required certificate of merit).

¶ 30 Since we conclude that Plaintiffs were not required to file a certificate of merit, we need not consider Plaintiffs' other two issues on appeal. For the reasons previously discussed, we reverse the trial court's Order denying Plaintiff's Motion to strike the judgment of *non pros* entered under Rule 1042.6.

¶ 31 Order reversed; case remanded for further proceedings; jurisdiction relinquished.