**Woods v. Woods**

C.P. of Armstrong County, no. 2003-1302-CIVIL.

*Robert Woods,* pro se.

*Thomas B. Anderson,* for defendant Alle-Kiski Medical Center.

*Elizabeth M. Yanell,* for defendants Woods and Bowser.

NICKLEACH, *P.J.,* September 2, 2005—Before the court for disposition are plaintiff's pro se petitions for relief from the judgments of non pros entered in favor of Michelle Woods, Richard Bowser and Alle-Kiski Medical Center, formerly known as Allegheny Valley Hospital. Said judgments were entered pursuant to Pa.R.C.P. 1042.6 for plaintiff's failure to timely file certificates of merit with respect to those three defendants. Plaintiff is presently incarcerated in a state correctional facility in Cresson, Pennsylvania, from which he is conducting this lawsuit pro se.

## PROCEDURAL POSTURE AND FACTS

This action was commenced by the filing of a complaint on October 14, 2003, against Woods, Bowser, Timothy Keener and the Hospital. At the time, plaintiff was represented by counsel. The complaint consisted of five counts. Count I, for invasion of privacy, was directed to Woods, plaintiff's ex-wife, and Bowser, Wood's alleged "paramour." It averred that on or about March 1998, Woods, who was still plaintiff's wife at the time and was then employed as a registered nurse at the Hospital, asked Bowser, a hospital security guard, to obtain plaintiff's confidential medical/psychiatric records from the Hospital records department without plaintiff's knowledge or consent. Complaint, ¶¶14-15. It further alleged that Bowser obtained plaintiff's records, Woods read them, and Bowser then returned the records to the Hospital

records department. *Id.* at ¶¶15-19. Plaintiff alleged that defendants went outside the normal, established procedure for securing medical records, and knew at all times that they were not authorized to have the records in their possession or to examine them. *Id.* at ¶¶20-22. Plaintiff further alleged that Woods examined the records to find out the extent and nature of plaintiff's mental problems and the treatment he was receiving for them, for the purpose of psychologically disarming and manipulating the plaintiff. *Id.* at ¶¶16-18.

Count II, for conspiracy, alleged that Woods and Bowser had conspired to secure and examine plaintiff's psychiatric medical records, and did in fact secure them in violation of his right to privacy. *Id.* at ¶¶24-31. It again alleged that Woods and Bowser had planned a way to secure the records of the plaintiff without authorization and outside the normal procedure of the Hospital, knowing that they were circumventing the law and plaintiff's right to privacy. *Id.* at ¶¶26-30.

Count III, for invasion of privacy, was addressed to Woods and Keener, another alleged paramour of Woods. It averred that on or about August 2001, after plaintiff had been released from the Hospital, Woods and Keener came into possession of plaintiff's psychiatric records without authorization, examined them, and used the information to try to induce plaintiff to have a breakdown. *Id.* at ¶¶32-40.

Count IV, for conspiracy, also was directed to Woods and Keener. It alleged that Woods and Keener conspired to invade plaintiff's privacy by obtaining his psychiatric records, that through these records they were able to learn the extent of plaintiff's illness and how he was being

treated, and that Woods used this information to try to cause him to have a breakdown. *Id.* at ¶¶41-48. It further alleged that Woods and Keener had planned a way to secure the records of the plaintiff without authorization and outside the normal procedure of the Hospital, knowing that to secure the records they would be violating plaintiff's privacy and the law because they were not authorized to look at, examine, copy or possess these records. *Id.* at ¶¶42, 43, 45.

Count V, for negligence, was addressed solely to the Hospital. It alleged that at all times complained of, Woods and Bowser were acting within the scope of their employment and as agents of the Hospital. *Id.* at ¶¶49-52. It charged that Woods and Bowser were able to procure plaintiff's records because the Hospital had negligently allowed Bowser to have access to the records department. *Id.* at ¶53. It further alleged that the Hospital was negligent in not having the records locked up to prevent unauthorized examination and copying of them, and that Bowser and Woods should not have been able to access plaintiff's records without authorization. *Id.* at ¶¶54-55. Finally, it averred that the hospital was vicariously liable for Woods' and Bowser's actions. *Id.* at ¶56.

The Hospital responded to the original complaint by filing an answer and new matter, while Woods, Bowser and Keener each filed preliminary objections. By opinion and order dated April 22, 2004, the court overruled Woods', Bowser's, and Keener's preliminary objections. However, on June 3, 2004, plaintiff's counsel filed an amended complaint without obtaining the consent of the defendants or leave of court. On July 16, 2004, Keener filed preliminary objections to plaintiff's first amended

complaint. On July 23, 2004, the Hospital also filed preliminary objections and on July 29, 2004, defendants Woods and Bowser filed preliminary objections as well.

On August 24, 2004, the court granted plaintiff's attorney's request that he be permitted to withdraw as counsel of record. Subsequently, on September 13, 2004, plaintiff filed a pro se motion for leave to file another amended complaint. In plaintiff's motion, he alleged, inter alia, that his former counsel had been remiss by not filing certificates of merit. On September 27, 2004, the court, noting the increasingly tangled procedural state of the case, granted plaintiff's motion to amend.

On October 14, 2004, plaintiff filed a second amended complaint (entitled "amended complaint"). This complaint, which expressly stated that plaintiff was asserting a professional liability claim against the Hospital, Woods and Bowser (second amended complaint, ¶2, ¶3, and ¶5), contained nine counts. Count I, for invasion of privacy, was directed to Woods and Bowser. It essentially reiterated and elaborated on the allegations in the original complaint that Woods and Bowser had obtained his psychiatric records without authorization. Second amended complaint, 10/14/04, ¶¶71-82.

Count II, entitled conspiracy and negligence per se, also was directed to Woods and Bowser. It alleged that Woods and Bowser had conspired to secure plaintiff's confidential psychiatric medical records in violation of his right to privacy and criminal law. *Id.* at ¶¶83-92. It further alleged that "it is negligence per se to conspire with another to commit a criminal violation." *Id.* at ¶89.

Count III, for invasion of privacy, was directed to Woods and Keener. It essentially reiterated and expanded

on the claims made in Count III of the original complaint that Woods and Keener had obtained plaintiff's medical/psychiatric records without authorization and examined them, intruding upon his seclusion. *Id.* at ¶¶93-101. Count IV, for conspiracy and negligence per se, claimed that Woods and Keener conspired to invade his privacy and to violate criminal law. *Id.* at ¶¶102-111.

Count V of the second amended complaint, for negligence, was directed to the Hospital. It essentially repeated the negligence allegations contained in the original complaint. *Id.* at ¶¶112-124. Count VI, for breach of contract, express contract, implied at law contract, and implied in fact contract, was directed to Woods and Bowser as agents of the Hospital. It alleged that the Hospital, and Woods and Bowser as its agents and employees, had violated the contract between Woods and the Hospital to keep his medical information confidential. *Id.* at ¶¶125-129.

Count VII of the second amended complaint, for conspiracy to commit murder and negligence per se, was directed to Woods and Keener. It alleged that Woods attempted to have plaintiff murdered by Bowser and Keener. *Id.* at ¶¶130-137. Count VIII, for fraud, was directed to Woods. It consisted of a rambling, disjointed recounting of various allegedly false and untruthful claims, testimony and reports allegedly made or given by Woods at various times. *Id.* at ¶¶138-146. Count IX, for fraud, was directed to Keener. It alleged various false claims, police reports and testimony made or given by Keener. *Id.* at ¶¶147-153.

On November 1, 2004, the Hospital filed a praecipe for entry of judgment of non pros pursuant to Pa.R.C.P.

1042.6 because plaintiff had not filed a certificate of merit with respect to the Hospital, or timely requested an extension of time to do so. That same day, judgment of non pros in favor of the Hospital was entered and notice of the entry of the judgment was mailed to plaintiff at the state penitentiary. On November 4, 2004, plaintiff filed a motion to extend the time for filing certificates of merit with respect to the Hospital, Woods and Bowser.

On November 8, 2004, Woods and Bowser filed a praecipe for entry of judgments of non pros in their favor due to plaintiff's failure to file certificates of merit with respect to them. The judgments were entered by the prothonotary that same day. The docket reflects that notice of the entry of judgments was mailed to plaintiff November 9, 2004. However, plaintiff says he never received notice that judgments of non pros had been entered in favor of Woods and Bowser and only learned of them when he received a letter from Woods' and Bowser's counsel on January 14, 2005, which stated that the judgments had been entered. (The notice sent to Woods on November 9, 2004, evidently did not state that judgment had been entered in favor of Woods and Bowser, but merely restated the fact that judgment of non pros had been entered in favor of the Hospital.)

By opinion and order dated November 24, 2004, the court denied plaintiff's motion for an extension of time to file certificates of merit on the basis that plaintiff had failed to file his motion within 60 days of the filing of the original complaint as required by Pa.R.C.P. 1042.3(d). Nonetheless, on December 8, 2004, plaintiff filed certificates of merit directed to Bowser and Woods. Each

certificate simply stated: "Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant. . . ." Plaintiff did not file any certificate of merit with respect to the Hospital.

On December 20, 2004, Keener filed preliminary objections to plaintiff's second amended complaint. On January 6, 2004, plaintiff sua sponte filed a third amended complaint (entitled "second amended complaint") against Keener, Bowser and Woods. For the first time, plaintiff did not include the Hospital as a named defendant.

On January 28, 2005, plaintiff filed the petition for relief from the judgments of non pros which is the subject of this opinion. Shortly thereafter, Keener filed preliminary objections to plaintiff's third amended complaint. On February 7, 2005, the court issued a rule to show cause why petitioner was not entitled to the relief he requested in his petition, setting a hearing date on the rule for April 26, 2005. On February 16, 2005, plaintiff sua sponte filed a fourth amended complaint (entitled "third amended complaint") as to Keener, Bowser and Woods, again omitting the Hospital as a party. The fourth amended complaint contained just four counts. Once again, plaintiff alleged invasions of his privacy and conspiracy to do so in connection with the defendants allegedly obtaining and reading plaintiff's medical/psychiatric records without his knowledge or consent.

On February 24, 2005, counsel for the Hospital and for Woods and Bowser filed answers to plaintiff's petition for relief from the non pros judgments. On March 24, 2005, plaintiff filed his response to their answers. The court heard argument on plaintiff's petition for re-

lief April 26, 2005. Plaintiff was not present due to his incarceration at the state correctional facility in Cresson.

## DISCUSSION

Plaintiff's petition for relief from judgment of non pros is governed by Pa.R.C.P. 3051, which states:

"(a) Relief from a judgment of non pros shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.

"(b) If the relief sought includes the opening of the judgment, the petition shall allege facts showing that

"(1) the petition is timely filed,

"(2) there is a reasonable explanation for the inactivity or delay, and

"(3) there is a meritorious cause of action." Pa.R.C.P. 3051.

Because the non prosses were entered for failure to file certificates of merit, the court must consider plaintiff's petition in light of the rules which govern professional liability actions and certificates of merit. Those rules are set forth in Pa.R.C.P. 1042.1 through 1042.8. Pa.R.C.P. 1042.1 states:

"Rule 1042.1. Professional liability actions. Scope. Definition.

"*(a)* The rules of this chapter govern a civil action *in which a professional liability claim is asserted against a licensed professional.*

"*(b)* As used in this chapter, *'licensed professional'* means

*"(1) any person who is licensed pursuant to an Act of Assembly as*

*"(i) a health care provider as defined by section 503 of the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. §1303.503;*[1]

"(ii) an accountant;

"(iii) an architect;

"(iv) a chiropractor;

"(v) a dentist;

"(vi) an engineer or land surveyor;

*"(vii) a nurse;*

"(viii) an optometrist;

"(ix) a pharmacist;

"(x) a physical therapist;

"(xi) a psychologist; and

"(xii) a veterinarian.

"(2) an attorney at law; and

"(3) any professional described in paragraphs (1) and (2) who is licensed by another state." Pa.R.C.P. 1041.1. (emphasis added)

Rule 1042.3, entitled "Certificate of Merit," states:

"(a) In any action *based upon an allegation that a licensed professional deviated from an acceptable professional standard,* the attorney for the plaintiff, or the plain-

---

1. MCARE defines a health care provider as "A primary health care center, . . . or a person, *including a corporation,* university or other educational institution *licensed or approved by the Commonwealth to provide health care or professional medical services as a . . . hospital, . . . and an officer, employee or agent of any of them acting in the course and scope of employment."* 40 P.S. §1303.503. (emphasis added)

64

tiff if not represented, *shall file* with the complaint or *within 60 days after the filing of the complaint,* a certificate of merit signed by the attorney or party *that* either

"(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability *that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards* and that such conduct was a cause in bringing about the harm, or

"(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

"(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

"(b) A separate certificate of merit shall be filed as to each licensed professional against whom a claim is asserted. . . .

"(d) The court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed 60 days. *The motion to extend the time for filing a certificate of merit must be filed on or before the filing date that the plaintiff seeks to extend.* The filing of a motion to extend tolls the time period within which a certificate of merit must be filed until the court rules upon the motion." Pa.R.C.P. 1042.3. (emphasis added)

Rule 1042.6, entitled "Entry of Judgment of Non Pros for Failure to File Certification," states:

"(a) The prothonotary, on praecipe of the defendant, shall enter a judgment of non pros against the plaintiff

*for failure to file a certificate of merit within the required time provided that there is no pending timely filed motion seeking to extend the time to file the certificate. . . ."* Pa.R.C.P. 1042.6. (emphasis added)

As a preliminary matter, the court must ascertain whether plaintiff's petition for relief was timely filed. The judgments of non pros were entered on November 1, 2004 and November 8, 2004, and the court's order denying plaintiff's motion for an extension of time was entered November 24, 2004. Plaintiff filed his petition January 28, 2005. Given the fact that pro se plaintiff is a prisoner at a state correctional facility, the court finds that plaintiff acted with reasonable diligence and his petition was timely filed.

The court must next consider whether there is a reasonable explanation for plaintiff's failure to timely file certificates of merit with respect to the Hospital, Woods, and Bowser. Pa.R.C.P. 3051(b)(2). Plaintiff alleges that he was not required to file certificates of merit with respect to his original complaint and his first amended complaint because neither one raised professional liability claims. See plaintiff's response to defendant's answer to petition, pp. 3-4.

When a claim does not sound in professional liability, it should not be non prossed for the failure to file a certificate of merit. See *Krauss v. Claar,* 879 A.2d 302 (Pa. Super. 2005); *Jackson v. Gary L. Sweitzer Enterprises Inc.,* 67 D.&C.4th 239, 244-45 (2004). Thus, the court must examine the substance of plaintiff's claims against Woods, Bowser and the Hospital to ascertain whether the claims are professional liability claims which require the filing of certificates of merit.

We will first address plaintiff's claim against the Hospital. The Hospital is unquestionably a licensed professional entity against which a professional liability claim can be made. See Pa.R.C.P. 1042.1(b)(1)(i). Nonetheless, plaintiff says he did not assert a professional liability claim against the Hospital until he filed his second amended complaint on October 14, 2004. Therefore, plaintiff says, he was not required to file a certificate of merit until then.

Plaintiff further argues that he had 60 days from the date he filed that second amended complaint to file a certificate of merit or in the alternative, a motion to extend the time for filing such a certificate. Plaintiff claims he timely filed his motion for an extension of time within 60 days of the filing of his second amended complaint by filing a motion for an extension of time on November 28, 2004.

The court is not convinced by plaintiff's arguments concerning the judgment of non pros entered in favor of the Hospital. The court first notes that plaintiff's last two amended complaints did not include the Hospital as a defendant, although they continued to name Woods, Bowser and Keener. Since plaintiff has himself chosen to drop the Hospital as a party, it is the court's opinion that plaintiff's petition for relief from the judgment of non pros with respect to the Hospital is now moot.

Even if plaintiff's petition for relief were not moot, it would fail on other grounds. The original complaint alleged that the Hospital was negligent in that it had failed to take proper measures to safeguard plaintiff's confidential psychiatric medical records. See complaint, Count V. This was clearly a claim for corporate liability, a "cause

of action for corporate negligence [which] arises from the policies, *actions or inaction of the institution itself* rather than the specific acts of individual hospital agents." *White v. Behlke,* 69 D.&C.4th 353, 362 (2004) (emphasis added) (citing *Welsh v. Bulger,* 548 Pa. 504, 513, 698 A.2d 581, 585 (1997) and *Moser v. Heistand,* 545 Pa. 554, 560, 681 A.2d 1322, 1326 (1996)).

"[S]ince a corporate liability claim is not based solely on respondeat superior principles and except in cases of obvious negligence, must be supported by expert testimony establishing a deviation from the accepted standard of care, a certificate of merit under Rule 1042.3 (a)(1) is required for a corporate negligence claim." *Id.* at 363; see also, *Yee v. Roberts,* 878 A.2d 906 (Pa. Super. 2005) (where count against a professional dental partnership stated a claim for both direct professional liability and for vicarious liability for negligent acts committed by its employees within the course and scope of their duties, a filing of a certificate of merit was required as to at least some of these allegations; thus, entry of a non pros judgment as to the entire count for failure to file a certificate of merit was proper.).

The court finds that plaintiff's negligence claim against the Hospital in the original complaint was a corporate liability claim which required the filing of a certificate of merit or a motion for extension of time within 60 days of the date the original complaint was filed on October 14, 2003.[2]

---

2. Count V of the original complaint also alleged that the Hospital was vicariously liable for the actions of Woods and Bowser. It is not clear whether a certificate of merit would have been required with respect to the vicarious liability aspect of the claim. However, because both theories were included in one count, it appears that judgment as

As to plaintiff's argument that the time for filing a certificate of merit began anew each time he filed an amended complaint, this is clearly not the law. The Superior Court has expressly held that a certificate of merit must be filed within 60 days of the filing of the *original complaint* which alleges professional liability and that subsequent amendments do not restart the 60-day period. *O'Hara v. Randall,* 879 A.2d 240, 245 (Pa. Super. 2005); *Hoover v. Davila,* 862 A.2d 591, 594 (Pa. Super. 2004).

Moreover, plaintiff has not offered a reasonable explanation for his failure to file a certificate of merit or a motion for an extension of time with respect to his claims against the Hospital. As the court noted in *Helfrick v. UPMC Shadyside Hospital,* 65 D.&C.4th 420, 423 (2003) (quoted approvingly by *Hoover,* 862 A.2d at 595 n.3):

*"Plaintiff's petition does not set forth a reasonable explanation or legitimate excuse for the inactivity (the inactivity being the failure of plaintiff's counsel to file within the 60-day period a certificate of merit or a motion to extend the time for filing the certificate.). This will be so in almost every case* in which a judgment of non pros is entered for failure to file a certificate of merit. *The plaintiff who has a reasonable explanation or legitimate excuse for not being able to timely file a certificate of merit may, instead, file a motion to extend the time for filing* the certificate *on or before the filing date that the plaintiff seeks to extend.* . . . . Consequently, *an explanation for the inactivity requires an explanation as*

to the entire count was proper. See *Yee,* 878 A.2d at 914. In his later complaints, plaintiff alleged that Woods and Bowser acted outside the scope of their employment, which would presumably defeat a vicarious liability claim. In any event, the issue is now moot.

*to why the plaintiff did not within the 60-day period file a motion to extend the time for filing the certificate of merit." Id.* (emphasis added)

In his November 2004 motion for an extension of time, plaintiff claimed that he needed to receive certain materials he had sought in discovery before he could produce a certificate of merit with respect to the Hospital. That explanation, proferred nearly two years after the filing of plaintiff's original complaint, does not pass muster. There is no reason why plaintiff could not have filed a motion for an extension of time within 60 days of filing the original complaint and pled his extenuating circumstances at that time. For all the above reasons, the court finds that judgment of non pros was properly entered against plaintiff with respect to the Hospital and plaintiff's petition for relief from that judgment is denied.

Next, the court will address plaintiff's petition for relief from the judgment of non pros entered in favor of Woods. Woods was a registered nurse at the Hospital when she allegedly obtained plaintiff's psychiatric hospital records without his consent. As such, she is a licensed professional. See Pa.R.C.P. 1042.1(b)(1)(vii). However, plaintiff's claims against Woods did not arise in the context of a nurse-patient relationship. To the contrary, Woods was not involved in plaintiff's medical treatment except as plaintiff's wife. Although Woods' employment at the Hospital as a nurse may have helped her gain access to plaintiff's medical records, the fact that she was a licensed professional is largely irrelevant to plaintiff's claim that she committed the intentional tort of invasion of privacy.

Given that Woods was not acting as plaintiff's nurse, the claims made against Woods in the original and subsequently filed complaints were not claims for medical malpractice, and plaintiff was not required to file a certificate of merit for Woods. See *Krauss,* 879 A.2d 302 (plaintiffs were not required to file a certificate of merit with respect to defendant attorney because there was no attorney-client relationship and plaintiffs' claims of negligent misrepresentation, intentional misrepresentation, promissory estoppel, equitable estoppel and tortious interference with contractual relations were not professional liability claims; therefore, trial court erred when it refused to strike the judgment of non pros for failure to file a certificate of merit).

Moreover, as the Superior Court recently explained:

"Although the basic elements of both ordinary negligence and medical malpractice are the same, medical malpractice has distinguishing charactistics. *Medical malpractice is further defined as the 'unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services.' Toogood,* 824 A.2d at 1145. . . .

"*One of the most distinguishing features of a medical malpractice suit is, in most cases, the need for expert testimony, which may be necessary to elucidate complex medical issues to a jury of laypersons.* In other words, '[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation

and the extent of the injury.' *Id.*" *Grossman v. Barke,* 868 A.2d 561, 566 (Pa. Super. 2005) (citing *Toogood v. Owen J. Rogal D.D.S., P.C.,* 573 Pa. 245, 824 A.2d 1140 (2003)). (emphasis added)

It is clear that plaintiff's claims against Woods for invasion of privacy and conspiracy to invade his privacy were not medical malpractice claims. Therefore, no certificate of merit was required to support them.

Was a certificate of merit required because Woods met the definition of a licensed professional under the MCARE definition of health care provider incorporated by reference in Pa.R.C.P. 1042.1(b)(1)(i)? The court thinks not. The MCARE definition, inter alia, defines a health care provider as *"a corporation, . . . licensed . . . to provide health care or professional medical services as a . . . hospital, . . . and an officer, employee or agent of any of them acting in the course and scope of employment. "* 40 P.S. §1303.503. (emphasis added) The pertinent test for whether an employee acted during the course of and within the scope of her employment is as follows:

"[A]n employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment. *Fitzgerald v. McCutcheon,* 270 Pa. Super. 102, 410 A.2d 1270, 1271 (1979). In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. *Id.* The conduct of an employee is considered 'within the scope of employment' for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a pur-

pose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Id.,* 410 A.2d at 1272 (citing Restatement (Second) of Agency, §228)." *Costa v. Roxborough Memorial Hospital,* 708 A.2d 490, 493 (Pa. Super. 1998).

Assuming that Woods was generally authorized to look at a hospital patient's medical records during the course of providing care to that patient, that is not what plaintiff alleges here. To the contrary, plaintiff alleges that his wife obtained and examined plaintiff's records outside of ordinary channels for purely personal reasons. Clearly, Woods was not acting "during the course of and within the scope of her employment" if, as plaintiff alleges, she knowingly and intentionally obtained his confidential psychiatric records outside ordinary channels and procedures for purely personal reasons. Moreover, Pa.R.C.P. 1042.1(b)(1)(i) by its terms appears to deal with vicarious liability claims, not direct professional liability claims, and thus should not be used to require a certificate of merit as to Woods, particularly where the Hospital is no longer even a party. For all these reasons, the court finds that no certificate of merit was required to be filed with respect to plaintiff's claims against Woods. Thus, plaintiff has met his burden of providing a reasonable explanation for not filing a certificate of merit.

Finally, the court will address plaintiff's claims against Bowser. According to the original and subsequent complaints, Bowser was employed as a hospital security guard at the time he allegedly conspired with Woods to invade plaintiff's privacy by stealing and copying plaintiff's confidential medical records. Certainly, a security guard would not ordinarily be considered a licensed profes-

sional subject to direct professional liability claims. See Pa.R.C.P. 1042.1(b). However, Bowser could be considered a licensed professional under the MCARE definition of health care provider incorporated by reference in Pa.R.C.P. 1042.1(b)(1)(i) as an *"employee or agent of any of them acting in the course and scope of employment."* 40 P.S. §1303.503. (emphasis added)

However, using the same analysis employed above with respect to Woods, the court finds that Bowser was not acting in the course and scope of his employment as a hospital security guard when he allegedly obtained and then returned plaintiff's confidential records for Woods outside normal channels. As with plaintiff's claims against Woods, the claims plaintiff stated against Bowser in the original complaint and in subsequent complaints did not require the filing of a certificate of merit. Thus, plaintiff has met his burden of proving a reasonable explanation for his failure to file same.

Woods and Bowser protest that plaintiff is bound by his assertions that his second amended complaint sounded in professional liability and that he was required to timely file certificates of merit subsequent to the filing of that complaint. The court does not agree. It would be absurd to demand that plaintiff file certificates of merit that were never required simply because plaintiff was at times operating under the mistaken impression that he needed to do so. Upholding the entry of non pros judgments in such a case would be a gross perversion of the rules of civil procedure governing the necessity for filing certificates of merit and of the policy that underlies those rules.[3]

---

3. See *Jackson,* 67 D.&C.4th at 245 ("The purpose of the certificate of merit requirement is to prevent the filing of baseless profes-

Finally, although recent decisions dealing with the necessity of filing certificates of merit have not always addressed the final prong of Pa.R.C.P. 3051 regarding the merits of the action, see *e.g., Krauss, supra; Jackson, supra,* the court finds that arguably the allegations made in plaintiff's second amended complaint are sufficient to pass muster regarding the final prong of Pa.R.C.P. 3051.

For all the above reasons, the court finds that plaintiff has met the requirements of Pa.R.C.P. 3051 with respect to the non pros judgments entered against him and in favor of Woods and Bowser. Therefore, the court will grant plaintiff's petition for relief with respect to Woods and Bowser and open the judgments of non pros entered in their favor. However, for the reasons previously stated, the court will deny plaintiff's petition for relief from the judgment of non pros entered in favor of the Hospital.

An appropriate order will be entered.

### ORDER

And now, September 2, 2005, after consideration of plaintiff's petition for relief from judgment of non pros, the responses thereto, and the record as a whole, it is hereby ordered, adjudged and decreed that:

(1) Plaintiff's petition for relief from the judgment of non pros entered in favor of Alle-Kiski Medical Center, formerly Allegheny Valley Hospital, is hereby denied.

---

sional negligence claims. Reading Rule 1042.6 to require the entry of judgment against the plaintiff on claims unrelated to professional negligence for failure to file a certificate of merit would lead to an absurd result.").

(2) Plaintiff's petition for relief from the judgments of non pros entered in favor of Michelle Woods and Richard Bowser is hereby granted. Said judgments will be opened forthwith.